**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| H-D U.S.A., LLC, <br><br> Plaintiff, <br> v. <br><br> XIAO YUN STORE, et al., <br><br> Defendants. | Case No. 21-cv-03581 <br><br> **Judge Jorge L. Alonso** <br><br> **Magistrate Judge Heather K. McShain** |

**PLAINTIFF'S RESPONSE TO DEFENDANT AMARZON-AUTOMOTIVE PART'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff H-D U.S.A., LLC ("Plaintiff" or "Harley-Davidson"), by its counsel, submits the following Response to Defendant Amarzon-Automotive Part's ("Defendant") Opposition to Plaintiff's Motion for Preliminary Injunction (the "Opposition") [37].

**I. BACKGROUND**

Harley-Davidson is a world-famous manufacturer of motorcycles and a wide variety of other products and services, including apparel, jewelry, leather goods, and assorted accessories. [12] at ¶ 3. Since at least as early as 1903, Harley-Davidson has used and promoted the HARLEY-DAVIDSON name and trademark in connection with motorcycles, motorcycle parts and accessories. *Id*. at ¶ 4. Plaintiff also uses and promotes its DAYMAKER trademark in connection with motorcycle headlights. *See* Declaration of Martin F. Trainor (the "Trainor Decl.") at ¶ 2.

Plaintiff holds registrations for its trademarks with the United States Patent and Trademark Office, including U.S. Registration No. 3,490,890 for HARLEY-DAVIDSON, and U.S. Registration No. 5,346,467 for DAYMAKER (collectively the "HARLEY-DAVIDSON and DAYMAKER Trademarks"). *See* [12] at ¶ 10. The HARLEY-DAVIDSON and DAYMAKER

1

Trademarks are valid, subsisting, in full force and effect, and U.S. Registration No. 3,490,890 is incontestable pursuant to 15 U.S.C. § 1065. *Id*. at ¶ 11.

Defendant operates a fully interactive e-commerce store on the e-commerce platform hosted by Amazon.com, Inc. ("Amazon"), under at least the seller alias Amarzon-Automotive Parts ("Defendant's Amazon Store"). Trainor Decl. at ¶ 3. Defendant advertised, offered for sale, and sold a motorcycle headlight using infringing and counterfeit versions of the HARLEY-DAVIDSON and DAYMAKER Trademarks ("Counterfeit Product"). *Id*. at ¶ 4. Specifically, Defendant advertised the Counterfeit Product as a "4-1/2' 4.5inch Chrome LED Fog Light Passing Projector Spot Driving Lamp Bulb Auxiliary Light for Motorcycle Harley Davidson Daymaker" (emphasis added). *See id*. This listing title is the most prominent text in the product listing and does not reference any other brands except for "Harley-Davidson" and "Daymaker". The listing title does not reference the purported brand of the headlight, BeltandRoad. *See id*; *see also* [37] at p. 2. Additionally, the preposition "for" is adjacent to the generic term "motorcycle" and not Harley Davidson or Daymaker. *See id*. The listing description goes on the state that the product "Fits most Harley-Davidson models." Further, Defendant's Amazon Store is named "Amarzon-Automotive Parts" and is one letter away from being named "Amazon-Automotive Parts." *See id*. As a result, Defendant's Amazon Store name is likely to mislead consumers into thinking they are purchasing products from an official Amazon store. *See* [12] at ¶¶ 25, 27.

Entry of a Preliminary Injunction against Defendant is proper because Plaintiff has satisfied all of the required elements, including showing a strong likelihood of success on the merits and irreparable harm. *See* [24]. Likewise, Defendant's use of both HARLEY-DAVIDSON and DAYMAKER in the item title is unnecessary and not a fair use. Moreover, Defendant's argument that the listing conveys the Counterfeit Product to be "for Daymaker" is both false since the listing

actually says "for motorcycle" and nonsensical since DAYMAKER is a type of headlight, not a type of motorcycle. The balance of harms remains in Plaintiff's favor. Without the asset restraint in place, Defendant is likely to move any restrained assets off-shore, denying Plaintiff of its right to the equitable remedy of an accounting of Defendant's profits.

Defendant seeks to dissolve the asset restraint based on one screenshot prior to any discovery or cross-examination.[1]  *See* [37-2].  Specifically, Defendant has provided a single screenshot purporting to show Defendant's sales of the Counterfeit Product without any corroborating declaration or affidavit, and, therefore, has failed to meet its burden to present documentary proof that the assets in Defendant's Amazon account are not the proceeds of sales of counterfeit products, such as information to characterize the type of products sold that make up the current restrained sum or the total revenue.  Defendant also failed to provide evidence regarding sales of *other* counterfeit products sold by Defendant's Amazon Store or counterfeit products sold on other e-commerce stores and websites that Defendant may operate.  Defendant also does not provide any evidence that Amazon Pay is the sole payment method available to its customers, and thus, there may be other methods of payment used by Defendant to sell counterfeit products.

Additionally, Defendant provides no details indicating that it is a legitimate seller that has non-counterfeit sources of revenue, such as a genuine address or business registration information. Defendant also presents no evidence that it is suffering any harm from the injunction or that it would suffer any harm should a Preliminary Injunction be entered.  For example, Defendant only contends that the asset restraint "will put [Defendant] out of business" and that Defendant "will not be able to pay employees or vendors" without providing any specific evidence of hardship. *See* [37] at p. 7. Courts in this district have regularly denied similar attempts by counterfeiters to

---

[1] Defendant's counsel contacted Plaintiff's counsel the afternoon before the hearing on Plaintiff's motion for entry of a preliminary injunction and offered no evidence related to sales information for Defendant.

dissolve asset restraints. *See Gianni Versace, S.p.A. v. ZOU YULAN, et al.*, No. 17-cv-07869 (N.D. Ill. Dec. 4, 2017) (unpublished) (Coleman, J.) (Docket No. 52) (denying dissolution of the asset restraint); *Luxottica Group S.p.A., et al. v. The Partnerships, et al.*, No. 18-cv-06608 (N.D. Ill. Jan. 24, 2019) (unpublished) (Docket No. 75) (same); *River Light V, L.P., et al. v. Zhangyali, et al.*, No. 15-cv-05918 (N.D. Ill. Sept. 9, 2015) (Docket No. 46) (same); *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. Sep. 29, 2015) (same). Defendant's argument should be rejected, or at a minimum, a Preliminary Injunction should be entered until Defendant has answered the Complaint and discovery has taken place.

## ARGUMENT

**I.        ENTRY OF A PRELIMINARY INJUNCTION REMAINS APPROPRIATE**

This Court has already found that Harley-Davidson has satisfied the requirements for entry of a Preliminary Injunction when it entered a Temporary Restraining Order. *See* [24]. Specifically, this Court has found that the following elements were met: (1) there is a reasonable likelihood that Harley-Davidson will succeed on the merits; (2) Harley-Davidson will suffer irreparable injury if the order is not granted because there is no adequate remedy at law; (3) the balance of hardships tips in Harley-Davidson's favor; and (4) the public interest will not be disserved by the injunction. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). These requirements remain satisfied.

        **A.        Harley-Davidson Has Shown a High Likelihood of Success on the Merits.**

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1). First, plaintiff must show "that its mark is protected under the

Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*. Harley-Davidson has shown a likelihood of success on the merits.

      i.     <u>Harley-Davidson Owns the Federally Registered HARLEY-DAVIDSON and DAYMAKER Trademarks</u>

Plaintiff holds registrations for the HARLEY-DAVIDSON and DAYMAKER Trademarks with the United States Patent and Trademark Office. [12] at ¶ 10. The HARLEY-DAVIDSON and DAYMAKER Trademarks are valid, subsisting, in full force and effect, and U.S. Registration No. 3,490,890 is incontestable pursuant to 15 U.S.C. § 1065. *Id*. at ¶ 11. The registrations for the HARLEY-DAVIDSON and DAYMAKER Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the HARLEY-DAVIDSON Trademarks pursuant to 15 U.S.C. § 1057(b). Plaintiff has not licensed or authorized Defendant to use any of the HARLEY-DAVIDSON and DAYMAKER Trademarks, and Defendant is not an authorized retailer of genuine Harley-Davidson products. *Id*. at ¶ 25. Thus, Plaintiff satisfies the first element of its claim.

      ii.    <u>Defendant's Use of the HARLEY-DAVIDSON and DAYMAKER Trademarks is Likely to Cause Consumer Confusion</u>

Defendant used an unauthorized mark which is identical with, or substantially indistinguishable from, the registered HARLEY-DAVIDSON and DAYMAKER Trademarks, and thus is counterfeit. 15 U.S.C. § 1127 (definition of "counterfeit"). *See* Trainor Decl. at ¶ 4. Defendant used both the HARLEY-DAVIDSON and DAYMAKER Trademarks in connection with the advertising, offering for sale, and sale of unauthorized goods. 15 U.S.C. § 1114(1)(a) (prohibiting the use in advertising of any goods or services on or in connection with a protected mark). *See Luxottica Grp. S.p.A. v. Li*, No. 16 CV 487, 2017 U.S. Dist. LEXIS 21818, at *8 (N.D. Ill. Feb. 15, 2017) (finding that because "defendant placed the mark in the title of the product

5

listing, where a consumer might expect to find a brand name, consumers would be likely to attribute both defendant's products and genuine Luxottica products to the same source"); *Tiffany & Co. v. Costco Wholesale Corp.*, 2015 U.S. Dist. LEXIS 119319, at *33 (S.D.N.Y. Sep. 8, 2015) (finding defendant liable for counterfeiting for using the word "Tiffany" displayed on signs next to rings stamped with generic marks); *Chloe SAS v. Sawabeh Info. Servs. Co*, 2014 U.S. Dist. LEXIS 124433, at *18 (C.D. Cal. Sept. 5, 2014) (finding that using a trademark in the product title constitutes trademark counterfeiting and confirming that "a protected mark need not appear 'on' the good offered for sale; it must only be used 'in connection with' the sale");.

The Seventh Circuit has held that where, as here, "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007); see also *NBA Props., Inc., et al. v. Yan Zhou*, et al., 2017 U.S. Dist. LEXIS 148971, at *5 (N.D. Ill. Sept. 14, 2017) (internal citation omitted). Accordingly, the Court can presume a likelihood of confusion from Defendant's use of the HARLEY-DAVIDSON and DAYMAKER Trademarks.

The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and, (7) the intent of the defendant to "palm off" its products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id*.

Defendant's Counterfeit Product was advertised using a mark identical to the HARLEY-DAVIDSON and DAYMAKER Trademarks. *See* Trainor Decl. at ¶ 4. Both Plaintiff and Defendant advertise products using the HARLEY-DAVIDSON and DAYMAKER Trademarks to the same consumers, targeting those consumers searching for genuine Harley-Davidson Products. [12] at ¶ 36. Thus, consumers searching for genuine Harley-Davidson Products (who are diverse with varying degrees of sophistication) are likely to have difficulty distinguishing genuine Harley-Davidson Products from Defendant's Counterfeit Product. This is particularly true since Defendant's Counterfeit Product was advertised and sold on the Internet, and consumers could not inspect the physical product. Further, Defendant was selling its product for $44.95. *See* Trainor Decl. at ¶ 4.[2] Courts "assume that the more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *Monster Energy Co. v. Meng Chun Jing*, No. 15 C 277, 2015 U.S. Dist. LEXIS 86956, at *7-8 (N.D. Ill. July 6, 2015). Plaintiff does not need to prove actual consumer confusion; rather it only needs to show a likelihood of confusion exists, particularly given the compelling evidence that Defendant is attempting to "palm off" its goods as genuine Harley-Davidson Products by using the HARLEY-DAVIDSON and DAYMAKER Trademarks. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Plaintiff has a strong likelihood of success on the merits.

      iii. <u>Defendant's Use of the HARLEY DAVIDSON and DAYMAKER Trademarks Does Not Constitute Fair Use</u>

Defendant argues that its use of the HARLEY DAVIDSON Trademark is fair use because it is a "descriptive term in a listing for a product sold by [Defendant]." [37] at p. 9. To prevail on its fair use defense, Defendant must show that: (1) it did not use the mark as a trademark; (2) the

---

[2] Plaintiff sells authentic Daymaker headlights for $399.95 to $849.95. *See* Trainor Decl. at ¶ 2.

7

use is descriptive of its goods or services; and (3) it used the mark fairly and in good faith. *Luxottica Grp. S.p.A. v. Li*, No. 16 CV 487, 2017 U.S. Dist. LEXIS 21818, at *9 (N.D. Ill. Feb. 15, 2017) (quoting *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 801, 193 L. Ed. 2d 712 (2016)).

### A. Defendant used both HARLEY DAVIDSON and DAYMAKER as Trademarks

Defendant's use of the HARLEY DAVIDSON and DAYMAKER Trademarks fails this test. First, Defendant's use of the HARLEY DAVIDSON and DAYMAKER Trademarks is in the product title of an item for sale where source identifiers are traditionally used. A word functions as a trademark when it is "used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the source and of its products." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 953 (7th Cir. 1992) (internal quotations omitted). Defendant prominently used the HARLEY DAVIDSON and DAYMAKER Trademarks in the product title after indicating the Counterfeit Product was "for Motorcycle[s]" as an "attention-getting symbol," and as a way to drive Amazon traffic to its listings. *See id*. at 954 (holding Defendant's use of "Thirst Aid" prominently in advertising as "attention-getting symbol" was trademark use). Conversely, Defendant did not use the purported brand of the headlight, BeltandRoad, in the item title to clarify that the product is not a genuine Harley-Davidson Daymaker product. Defendant's use of the HARLEY DAVIDSON and DAYMAKER Trademarks is also unnecessary since the listing description provides that the product "Fits most Harley-Davidson models." As such, Defendant fails to satisfy the first element.

### B. Defendant's use of both HARLEY DAVIDSON and DAYMAKER is Not Descriptive of the Goods

Defendant asserts that it advertised the Counterfeit Product as being "for" Harley Davidson and Daymaker and that the listing "shows that the part is a fit for certain Harley Davidson models."

8

*See* [37] at p. 7. This argument is nonsensical. Harley-Davidson sells headlights using the DAYMAKER Trademark. *See* Trainor Decl. at ¶ 2. Harley-Davidson does not sell Daymaker-branded motorcycles. As such, the Counterfeit Product cannot be "for Daymaker" because the Counterfeit Product is a headlight that cannot be "compatible with" any of Plaintiff's Daymaker-branded headlights. Defendant used the DAYMAKER Trademark at the end of the listing title to palm off its Counterfeit Product as a genuine Daymaker-branded headlight. Similarly, a consumer searching for a genuine Harley-Davidson headlight would be confused by seeing Harley-Davidson's DAYMAKER Trademark in the title of a listing for a headlight.

Defendant also asserts that its listing says that the Counterfeit Product is "compatible with [Harley-Davidson] or "for [Harley-Davidson].[3] *See* [37] at p. 3. However, the title of the Counterfeit Product listing states the product is "For Motorcycle[s]" generally before using Plaintiff's HARLEY-DAVIDSON and DAYMAKER Trademarks. *See id*. The Counterfeit Product listing does not state that the Counterfeit Product is "for Harley Davidson" or "compatible with Harley Davidson."

Defendant's reliance on the *KTM* case is misplaced, as the defendants in that case actually sold products with "for KTM" in the product listing titles. *See KTM AG v. The Individuals, et al.*, No. 21-cv-01280 (N.D. Ill. May 26, 2021) (Docket No. 54); [37-3] at p. 8 ("It says, 'Oil filler cap plug **for KTM**,' and then it lists a number of models of KTM motorcycles.") (emphasis added). However, Defendant's Counterfeit Product listing did not have "for Harley Davidson" in the title, and the Counterfeit Product listing title does not recite any Harley-Davidson motorcycle models that the Counterfeit Product is compatible with. *See* Trainor Decl. at ¶ 5; [37-3] at p. 8.

---

[3] Portions of the Opposition appear to have been copied and pasted from Defendant's counsel's similar brief filed in 21-cv-1280 and not updated to reflect the factual differences between that case and the present case. *See KTM AG v. The Individuals, et al.*, No. 21-cv-01280 (N.D. Ill. May 14, 2021) (unpublished) (Docket No. 43) at p. 4.

9

Furthermore, the defendants in the *KTM* case did not use multiple trademarks in the alleged infringing product listing titles as Defendant did here. *See id*. (showing Defendant's use of the DAYMAKER Trademark in the title of the Counterfeit Product listing in addition to the HARLEY DAVIDSON Trademark). Therefore, Defendant fails to satisfy the second element.

### C. Defendant's use of both HARLEY DAVIDSON and DAYMAKER was Not In Good Faith

Finally, Defendant's use of the HARLEY DAVIDSON and DAYMAKER Trademarks at the end of the Counterfeit Product listing title was not in good faith. There was no reason to use either trademark in the item title, let alone both, since the listing description already states that the product "Fits most Harley-Davidson models." *See Volkswagen AG, et al. v. Iman365-USA, et al.*, No. 18-cv-6611 (N.D. Ill. Feb. 28, 2020) (unpublished). Further bad faith is shown because Defendant does not even use the purported brand of the headlight it was selling, BeltandRoad, in the item title to clarify that the product is not a genuine Harley-Davidson Daymaker product. Additionally, bad faith is evidenced when considering that Defendant's Amazon Store is named "Amarzon-Automotive Parts" and is one letter away from being named "Amazon-Automotive Parts." *See id*. As a result, the name of Defendant's Amazon Store is likely to mislead consumers into thinking they are purchasing products from an official Amazon store. *See* [12] at ¶¶ 25, 27.

As such, Defendant cannot show that it meets all three elements required for its fair use defense. Accordingly, Plaintiff continues to have a likelihood of success on all claims, including trademark counterfeiting.

### B. Plaintiff Does Not Have an Adequate Remedy at Law and Will Suffer Irreparable Injury Without the Preliminary Injunction.

Plaintiff is "entitled to a rebuttable presumption of irreparable harm" in this case pursuant to the Trademark Modernization Act of 2020. *See* Consolidated Appropriations Act, 2021, Pub. L. 116-260. The Trademark Modernization Act of 2020, signed into law on December 27, 2020,

10

modified the text of 15 U.S.C. § 1116(a) relating to awarding injunctive relief in trademark infringement actions by inserting the following sentence:

> A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order.

*Id*. Because Plaintiff has shown a likelihood of success of the merits, Plaintiff is entitled to the benefit of the rebuttable presumption provided in Section 1116(a). Defendant has failed to rebut that presumption. Moreover, the Seventh Circuit has clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no legal remedy. *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013) ("irreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion"); *Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001).

Harley-Davidson and its dealers and licensees have sold many billions of dollars of products and services under the HARLEY-DAVIDSON and DAYMAKER Trademarks over the years, and have expended millions of dollars advertising and promoting those marks through virtually every media. [12] at ¶ 20. As such, the goodwill associated with the HARLEY-DAVIDSON and DAYMAKER Trademarks is of incalculable and inestimable value to Plaintiff. *Id.* at ¶ 21. Defendant's attempt to "piggyback" off Plaintiff's efforts through the unauthorized use of the HARLEY-DAVIDSON and DAYMAKER Trademarks has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. *See id.* at ¶¶ 32-37; *see Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's

11

goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages.").

Defendant asserts that Plaintiff cannot show irreparable harm because "it does not intend to seek an accounting of profits in the case." [37] at p. 8. However, Defendant also cites the section of Plaintiff's Prayer for Relief in its Complaint where Plaintiff requests that Defendants account for and pay to Harley-Davidson all profits realized by Defendants by reason of Defendants' unlawful acts alleged. *Id*. at p. 8. Defendant has no basis to assert that "Plaintiff is not genuinely seeking an accounting of profits as a basis for judgments." *Id*. In fact, the decision that Defendant cites, *Deckers Outdoor Corporation*, states if "defendants were to file appearance and subject themselves to discovery, it is very likely that [Plaintiff] would win an accounting of profits." *Deckers Outdoor Corp. v. The Partnerships*, No. 13 C 07621, 2013 U.S. Dist. LEXIS 205985, at *6 (N.D. Ill. Oct. 30, 2013).

Finally, Defendant argues that Plaintiff cannot show irreparable harm because it "affirms that they will not list for sale any of the 'at-issue' products, nor any other listing bearing Plaintiff's marks, until this matter is resolved." [37] at p. 7. However, a defendant "faces a heavy burden to establish mootness [of an injunction] in such cases because otherwise they would simply be free to return to their old ways after the threat of a lawsuit has passed." *Rebel Debutante LLC v. Forsythe Cosmetic Group, Ltd.*, 799 F. Supp. 2d 558, 567 (M.D. N. Cal. 2011) (quoting *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001)). Bald assertions by a defendant that it will not sell infringing products again are not enough to carry this heavy burden and, in the context of an infringement action, such assertions standing alone cannot eliminate the

plaintiff's reasonable expectation that the alleged violation will recur in the absence of a court order. *Id*. As such, this argument fails.

      **C.     The Balance of Harms Remains in Plaintiff's Favor**

The balance of harms has not shifted and remains in Plaintiff's favor. Without the asset restraint, Plaintiff would be prevented from realizing its right to final equitable relief of an accounting of profits and damages and would be irreparably harmed. If the asset restraint is lifted, it is highly likely that Defendant will transfer the current balance of $30,693.24 out of its Amazon account and outside of the United States. *See* [11] at ¶¶ 5-11. Defendant has provided no evidence that it has other identifiable assets in the United States.

Moreover, Defendant has not asserted or shown that it is being harmed by the restraint. For example, Defendant only contends that the asset restraint "will put [Defendant] out of business" and that Defendant "will not be able to pay employees or vendors" without providing any evidence of hardship. *See* [37] at p. 7. Given Defendant's willful counterfeiting, Defendant should be given little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). In assessing the risk of irreparable harm to Defendant, the Court should "exclude any burden it voluntarily assumed by proceeding in the face of a known risk." *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, 2016 U.S. Dist. LEXIS 144660, at *28 (N.D. Ill. Oct. 19, 2016). Conversely, without the asset restraint in place, Defendant is likely to move any restrained assets offshore and Plaintiff would be prevented from realizing its right to final equitable relief of an accounting of profits. *See* [11] at ¶¶ 5-11. Accordingly, the balance of harms continues to favor Plaintiff and Defendant presents no contrary evidence.

      **D.     The Asset Restraint Remains Appropriate**

A restraint on assets is proper if a suit seeks equitable relief. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) *Cf. Grupo Mexicano de Desarrollo, S.A.v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999). Plaintiff seeks equitable relief. Section 35 of the Lanham Act provides that a plaintiff in a trademark infringement shall be entitled "**subject to the principles of equity**, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a) (emphasis added). "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive **the court may in its discretion** enter judgment for such sum **as the court shall find to be just**, according to the circumstances of the case." *Id*. Additionally, subsection (c) provides that "plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages….**as the court consider just**." 15 U.S.C. § 1117(c). Plaintiff's Complaint [1] includes a claim for an accounting of Defendant's profits, which is an equitable remedy. *Gucci Am. v. Bank of China*, 768 F.3d 122, 130-133 (2d Cir. 2014). The burden to prove "the amount of any continued asset freeze" and "the statutory burden of proving sales [is] placed squarely upon" the party seeking relief, *i.e.*, Defendant, to present documentary proof that particular assets are not the proceeds of counterfeit sales. *Luxottica USA LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2015 U.S. Dist. LEXIS 78961, at *11 (N.D. Ill. June 18, 2015) (citing *N. Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist. LEXIS 14226, at *11 (S.D.N.Y. Mar. 30, 2006)).

Defendant has failed to produce documentary proof that the transactions processed through Defendant's Amazon account for the restrained balance of $30,693.24 are not the proceeds of counterfeiting activities. Defendant has also failed to produce any evidence characterizing the transactions, including the types of products, for the total revenue received by Defendant's

14

Amazon account. In fact, Defendant has only produced one screenshot purporting to show Defendant's sales of the Counterfeit Product but failed and refused to produce evidence related to total sales revenues, types of products sold, etc. Defendant has only presented conclusory statements that the asset restraint "will work a tremendous injustice" on Defendant. *See* [37].

Defendant has also failed to provide any evidence regarding other payment methods used or other e-commerce stores it may be operating. It is quite possible that Defendant has sold Counterfeit Products utilizing other payment methods, *e.g.,* credit cards or PayPal, or made counterfeit sales though e-commerce stores that have not yet been identified. Courts have maintained asset restraints where defendants failed to present documentary evidence that particular assets are not the proceeds of counterfeiting activities. *See Gianni Versace, S.p.A. v. ZOU YULAN, et al.*, No. 17-cv-07869 (N.D. Ill. Dec. 4, 2017) (unpublished) (Docket No. 52). For these reasons, Defendant has not met its burden and the asset restraint on Defendant's Amazon account remains proper. As such, Plaintiff's Motion for Entry of a Preliminary Injunction [31] against Defendant is appropriate and should be granted.[4]

---

[4] Alternatively, Plaintiff intends to move to keep assets restrained under Fed. R. Civ. P. 64. *See M.S. Distrib. Co. v. Web Records, Inc.*, 2003 U.S. Dist. LEXIS 9092, at *4 (N.D. Ill. May 30, 2003).

Dated this 27th day of August 2021.　　　　Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
RiKaleigh C. Johnson
Martin F. Trainor
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rjohnson@gbc.law
mtrainor@gbc.law

*Attorneys for Plaintiff H-D U.S.A., LLC*