THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| H-D, U.S.A, LLC, | ) | |
| | ) | No. 21 C 3581 |
| Plaintiff, | ) | |
| | ) | Judge Jorge L. Alonso |
| v. | ) | |
| | ) | |
| THE PARTNERSHIPS and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A", | ) | |
| | ) | |
| Defendants. | ) | |

## Memorandum Opinion and Order

Plaintiff H-D U.S.A., LLC's ("Harley-Davidson" or "Plaintiff") filed a Motion for Entry of a Preliminary Injunction against the fully interactive, e-commerce stores operating under the seller aliases identified in Schedule A to the Complaint. Amarzon-Automotive Parts ("Defendant"), one of those defendants, has appeared and filed a response to Plaintiff's motion for preliminary injunction contesting both the appropriateness of the injunction and the asset restraint proposed by Plaintiff. For the reasons below, the Court grants Plaintiff's motion for preliminary injunction as it relates to Defendant Amarzon-Automotive Parts.

## Background

This case centers around Plaintiff's allegations that Defendant sold counterfeit products on the internet containing Plaintiff's registered trademarks. Plaintiff sells motorcycles and associated products under the Harley-Davidson brand. Plaintiff holds registrations for its trademarks with the United States Patent and Trademark Office, including U.S. Registration No. 3,490,890 for HARLEY-DAVIDSON, and U.S. Registration No. 5,346,467 for DAYMAKER (collectively the "HARLEY-DAVIDSON and DAYMAKER Trademarks"). Defendant operates

an interactive e-commerce store on the platform hosted by Amazon, Inc. (i.e., amazon.com) selling after-market motorcycle components.

Plaintiff alleges that Defendant violated its valid and subsisting trademarks by selling counterfeit merchandise infringing on its HARLEY-DAVIDSON and DAYMAKER Trademarks. Plaintiff brings claims against Defendant for federal trademark infringement and counterfeiting under 15 U.S.C. §1114 (Count I) and false designation of origin under 15 U.S.C. §1125(a) (Count II). [1]. The item at issue with respect to this specific Defendant is an after-market chrome LED fog light projector. Below is a screenshot of that item as it appears on Amazon's e-commerce website. *See* [40-3].



## Discussion

To obtain a preliminary injunction, Plaintiff must show: (1) it has a reasonable likelihood of success on the merits; (2) that it has no adequate remedy at law; and (iii) that it will suffer irreparable harm without an injunction. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002), as amended (Oct. 18, 2002). Ultimately, the moving party bears the burden

2

of showing that a preliminary injunction is warranted. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). If Plaintiff makes this showing, then the Court must weigh the balance of harms to each party with or without the injunction. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d at 811. Finally, the Court must ascertain whether the preliminary injunction is in the public interest, which entails considering any effects on non-parties. *Id.*

Plaintiff moves for a preliminary injunction asking the Court to prohibit Defendant from using its HARLEY-DAVIDSON and DAYMAKER Trademarks and freezing Defendant's Amazon account (Amarzon-Automotive Parts). Defendant argues that a preliminary injunction is inappropriate because Defendant's sale of the LED fog light projector constitutes fair use. In the alternative, Defendant contends that the injunction's scope should be reduced to $5,000 because most of its Amazon account proceeds are related to sales of other items. Defendant further argues that an injunction and complete asset restraint would effectively force Defendant out of business. The Court addresses the applicable factors in turn.

## I. Reasonable Likelihood of Success on the Merits

Plaintiff must establish each threshold element to warrant the imposition of an injunction. *Holbrook Mfg. LLC v. Rhyno Manufacturing, Inc.*, 497 F. Supp. 3d 319, 329 (N.D. Ill. 2020). In *Illinois Republican Party v. Pritzker*, the Seventh Circuit clarified how likely success on the merits must be to satisfy the standard. 973 F.3d 760, 762 (7th Cir. 2020). It explained that a "possibility of success is not enough" and "[n]either is a better than negligible chance[,]" but the moving party "need not show that it definitely will win the case." *Id.* at 762-763. "A strong showing" of a likelihood of success on the merits "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* (internal citations and quotations omitted).

Here, Plaintiff brings two claims: trademark infringement and counterfeiting under 15 U.S.C. §1114 (Count I) and false designation of origin under 15 U.S.C. §1125(a). To prevail under its trademark infringement claim, Plaintiff must show "that its mark is protected under the Lanham Act", and that the challenged mark is likely to cause confusion among consumers. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Similarly, to prevail under its false designation of origin claim, Plaintiff must show that: (1) the defendant used a false designation of origin or false representation in connection with its goods; (2) the defendant caused those goods to enter interstate commerce; and (3) consumers are likely to be confused by the false representation. *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990) (citing 15 U.S.C. § 1125(a) ).

The parties agree that Plaintiff's trademarks are federally registered trademarks and therefore protected under the Lanham Act. As a result, the Court need only focus on whether Defendant's use of Plaintiff's trademarks is likely to cause consumer confusion. The Seventh Circuit considers seven factors in determining whether a likelihood of confusion exists: (1) the marks' similarity in appearance and suggestion; (2) the products' similarity in connection with which the marks are used; (3) the area and manner of the marks' concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiff. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). Moreover, the Court must also consider Defendant's invocation of the fair use defense, which requires the Defendant show: (1) it used plaintiff's marks in non-trademark use; (2) the marks were descriptive of Defendant's goods or services; and (3) Defendant used the marks fairly and in good faith only to describe its goods or services or their geographic location. 15 U.S.C. § 1115(b)(4).

Here, the Court finds that Plaintiff has carried its burden demonstrating a reasonable likelihood of success on the merits, and that Defendant fails to demonstrate it is likely to prevail on a fair use defense. First, the title of Defendant's product is "4-1/2" 4.5inch Chrome LED Fog Light Passing Projector Spot Driving Lamp Bulb Auxiliary Light for Motorcycle Harley Davidson Daymaker[.]" Defendant argues that this constitutes descriptive use of Plaintiff's marks, describing that their product fits Harley-Davidson motorcycles. But the way it is written, this title describes that the product is "for" motorcycles generically—not for Harley-Davidson motorcycles. Thus, from a grammatical perspective, Defendant's argument does not support a plain reading of the title.

Second, Daymaker doesn't make a motorcycle. In fact, Daymaker doesn't describe any of the at-issue product's characteristics. Rather, Harley-Davidson sells fog lights under its Daymaker trademark and thus is a competitor in the after-market fog light projector business. As such, Defendant's argument does not make sense from a practical context either. Unless Defendant intended for consumers to equate its product with a Daymaker product, there would be no other reason to include that trademarked name in the title of its product. In fairness, the brand name, BeltandRoad, does appear just below the title, but the inclusion of Plaintiff's trademarked names in the product's title creates a confusion that this product originated from Harley-Davidson's Daymaker brand.

Third, the Court finds it relevant that the title of Defendant's account name is Amarzon-Automotive Parts, which is strikingly similar to Amazon-Automotive Parts. Although this does not directly indicate Defendant's intent with respect to Harley-Davidson's trademarks, it is a factor the Court considers when evaluating Defendant's overall intent in using the HARLEY-DAVIDSON and DAYMAKER trademarks. Based on these facts, the Court finds that Plaintiff

establishes a reasonable likelihood of success on the merits.

The parties also offer competing interpretations of Judge Feinerman's oral opinion in the case *KTM AG v. The Individuals, etc.*, Case No. 21-cv-1280, Dkt. 54 (N.D. Ill. May 26, 2021). Several key differences distinguish that case from this one. First, the product at issue in *KTM* contained the defendant's brand name on the product itself—alleviating any potential for consumer confusion. *See Bell v. Harley Davidson Motor Co.*, 539 F. Supp. 2d 1249, 1258 (N.D. Ill. 2008) (holding that defendant did not put allegedly infringing mark on its merchandise where one would expect to find the source-identifiers of a product). Second, the plaintiff's trademark appeared in the descriptive section on the webpage, not in the product's title. In fact, the *KTM* defendant's brand name appeared in the product's title, not the alleged infringed mark, further disabusing any potential customer that they were purchasing a genuine Harley-Davidson product. *See KTM AG v. The Individuals, etc.*, Case No. 21-cv-1280, Dkt. 47-1 (N.D. Ill. May 22, 2021). That is not the case here as Defendant's brand name does not appear in the product's title. But Harley-Davidson and Daymaker's names do. Third, the use of plaintiff's trademark in *KTM* was simply descriptive in the context of the sentence it was used for. To wit, the defendant described its product as "Completely waterproof design. Work for most Motorcycles such as Honda, Kawasaki, KTM, Suzuki, Yamaha and many other brands as well." *Id.* This description clearly reads that the product is compatible with a host of different brands; whereas, in this case, Defendant's title focuses on one brand: the Harley-Davidson brand.

To be sure, this case presents a close call. But based on analysis of the applicable factors and evidence presented, the Court finds that Plaintiff has carried its burden and demonstrated a reasonable likelihood of success on the merits warranting the imposition of a preliminary injunction.

**II.     Adequate Remedy at Law / Irreparable Harm**

The irreparable harm and adequate remedy factors tend to merge; therefore, the Court will consider them together. *See Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Traditionally, the Seventh Circuit applied a presumption that when a plaintiff sufficiently establishes trademark infringement, the plaintiff will suffer irreparable harm and has no adequate remedy at law absent an injunction. *See, e.g.*, *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). There is some debate about whether this presumption survived the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), and the Seventh Circuit's subsequent decision in *Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012). *See Holbrook Mfg. LLC*, 497 F. Supp. 3d at 333 (collecting cases). But the Court need not spend long here because the evidence supports that Plaintiffs are likely to suffer irreparable harm in the absence of an injunction and that it has an inadequate remedy at law.

Irreparable harm is harm that is "not fully compensable or avoidable by the issuance of a final judgment (whether a damages judgment or a permanent injunction, or both) in the plaintiff's favor." *Kraft Foods Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013). Relatedly, a plaintiff's "ability to quantify damages" indicates that the plaintiff will not suffer irreparable harm for which there is no adequate remedy at law, because money damages would be a sufficient "make whole" remedy at the case's end. *Kinney v. Chicago & N.E. Ill. Dist. Council United Bros. of Carpenters*, 825 F. Supp. 843, 850 (N.D. Ill. 1993).

Here, that harm takes the form of lost consumer confidence and damage to Plaintiff's goodwill, a form of damage that courts have repeatedly found can constitute irreparable harm. *See Luxottica USA LLC v. The Partnerships and Unincorporated Associations Identified on*

7

*Schedule A*, Case No. 14-cv-9061, 2015 WL 3818622, at *4 (N.D. Ill. June 18, 2015) (citing *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001)). Moreover, Plaintiff spent significant time and resources advertising and promoting its products, which strongly indicates "that the mark has significant economic value as a source identifier" and that "[a]ny infringement that impedes that identifying function will cause significant harm." *Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, Case No. 14-cv-7424, 2015 WL 3633987, at *12 (N.D. Ill. June 10, 2015). Without injunctive relief, Plaintiff would have no way to protect its registered marks and goodwill. What's more, Plaintiff clearly includes a prayer for relief requesting an accounting of profits related to Defendant's sale of allegedly infringing products. As such, the Court finds that Plaintiff has satisfied the irreparable harm and inadequate remedy at law factors.

### III.     Balancing the Harms / Public Interest

Finally, the Court considers the balance of harms and effect an injunction will have on the public. Without injunctive relief, Defendant could continue selling its competing product and confuse consumers into believe they are purchasing a genuine Harley-Davidson and/or Daymaker product. Preventing consumer confusion in the marketplace is a central goal when issuing injunctive relief in trademark infringement cases. *See Holbrook Mfg. LLC*, 497 F. Supp. 3d at 336. Defendant, on the other hand, argues that a complete asset restraint would cripple its business and ostensibly force it to close its doors. It further argues that a complete asset restraint is inappropriate considering the limited of revenue generated from sales of its fog light product.

"To exempt assets from an asset freeze, 'the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities.'" *Luxottica USA LLC*, 2015 WL 3818622, at *5 (internal citations omitted); *see also Entertainment One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 954-55 (N.D. Ill. 2019). Here,

Defendant attaches an untranslated screenshot of what purports to be a graph showing Defendant's proceeds from the at-issue fog light projector. But this document is untranslated (written in what appears to be Mandarin) and is unaccompanied by any declaration or other evidence supporting that this document is what it purports to be. Accordingly, the Court does not have sufficient evidence to determine what, if any, assets are related to the sale of the at-issue fog light as opposed to proceeds related to the sale of other products.

## Conclusion

The Court grants Plaintiff's motion for preliminary injunction. Defendant Amarzon-Automotive Parts is enjoined per the conditions set forth in the Court's prior order [39] granting Plaintiff's motion for preliminary injunction.

**SO ORDERED.**                                                                 **ENTERED: September 24, 2021**

                                                                                  _____
                                                                                  **HON. JORGE ALONSO**
                                                                                  **United States District Judge**